**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| **ROCKDALE COUNTY,** | |
| *Plaintiff*, | **C. A. No. 1:24-cv-04916-SEG** |
| *v.* | **JURY TRIAL DEMANDED** |
| **BIO-LAB INC.;**<br>**KIK INTERNATIONAL LLC;** and<br>**KIK CUSTOM PRODUCTS INC.,** | |
| *Defendants*. | |

## FIRST AMENDED COMPLAINT

Plaintiff, Rockdale County, brings this First Amended Complaint against Defendants, Bio-Lab, Inc. ("Bio-Lab"); KIK International LLC ("KIK International"); and KIK Custom Products Inc. together ("Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.     This case arises from a four-alarm fire that occurred on September 29, 2024, which started on Bio-Lab's facility roof, located in Conyers, Rockdale County, Georgia.  The fire led to the release of hazardous chemicals, including chlorine, chloramine, and bromine, resulting in a significant smoke plume that contaminated the air and atmosphere and currently poses serious health risks to the surrounding community. The incident prompted immediate emergency responses from Rockdale County local authorities, who issued shelter-in-place orders and established evacuation zones affecting over seventeen thousand (17,000) residents.

2.     Defendants' conduct reflects a blatant disregard for safety protocols and industry standards.  The fire at the Bio-Lab plant was exacerbated by Defendants' failure to properly secure and manage hazardous materials stored on-site, and to properly install and maintain fire

suppression systems adequate to quickly and effectively extinguish fires that are volatile and reactive. Despite prior warnings and the known risks associated with their operations, and Defendants' prior failures to adequately apprise state and local officials of the release of extremely hazardous materials from their facility, Defendants did not take adequate precautions to prevent such an incident, including but not limited to insufficient employee training on emergency response, providing and maintaining adequate fire sprinklers and fire control systems, and inadequate maintenance of other safety equipment. This negligence directly contributed to the intensity of the fire and the subsequent release of harmful chemicals into the atmosphere, and again failed to promptly and adequately apprise state and local officials regarding the release of harmful chemicals.

3.      Defendants, through their negligent operations and failure to implement adequate safety measures, caused the release of toxic substances into the environment and atmosphere. The resulting chemical reactions from the fire have led to severe air quality issues, with reported increases in chlorine and bromine particles in the atmosphere, as confirmed by Georgia Tech's Atmospheric Science and Chemistry Measurement Network.[1]

4.      Defendants have a long history of negligence and disregard for safety protocols, as demonstrated by the facility's history of compliance violations and previous incidents involving chemical spills and fires. Particularly, prior incidents at the Bio-Lab plant include a chlorine vapor cloud that resulted in the closure of Interstate Highway 20 in September 2020 and a significant fire in 2004 that prompted mass evacuations due to the release of over 12.5 million pounds of chemicals. These occurrences, coupled with the ongoing investigations by the U.S. Environmental

---

[1] https://chemistry.gatech.edu/news/cloud-noxious-chemicals-and-lawsuits-descending-outside-atlanta (https://perma.cc/KJ8J-3RK3).

Protection Agency ("EPA") and the U.S. Chemical Safety and Hazard Investigation Board (CSB), highlight Defendants' failure to maintain safe operating conditions and adequately protect the surrounding community from the inherent dangers associated with their operations.

5.      Plaintiff seeks damages related to its responsibilities and response to the emergency, which include but are not limited to the deployment of emergency officials, public notifications, and the cleaning of debris resulting from the incident. This action seeks to hold Defendants accountable for their conduct and to secure appropriate remedies for the impact on the municipality and its residents.

6.      Plaintiff hereby requests compensatory and punitive damages to the fullest extent permitted by Georgia law. Additionally, Plaintiff seeks the abatement of the ongoing nuisance and trespass created by the Bio-Lab fire, along with equitable and injunctive relief, under both Georgia law and federal law, that compels Defendants to completely mitigate and remediate the contamination caused by the fire, in order to prevent any further releases of hazardous chemicals, including, but not limited to, chlorine, chloramine, bromine, and other toxic substances, into the atmosphere, plus the imposition of civil penalties under federal law.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction); 28 U.S.C. § 2201 (governing actions for declaratory relief); 42 U.S.C. § 7604(a) (the citizens suit provision of the Clean Air Act); and the Emergency Planning and Community Right-to-Know Act (EPCRA), 42 U.S.C. § 11046(c) (the citizens suit provision of EPCRA). This Court also has pendent jurisdiction over the state-law claims asserted against Defendants.

8.    This Court has personal jurisdiction over Defendants because, based on information and belief, each is a corporation or other business that either is a citizen of the State of Georgia or has sufficient minimum contacts in Georgia or otherwise intentionally avails itself of the Georgia market either through the manufacturing, distribution or sale of pool and spa maintenance products in the State of Georgia so as to render the exercise of jurisdiction over it by this Court consistent with both Ga. Code § 9-10-91 (long-arm statute) and traditional notions of fair play and substantial justice.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events, omissions and harms that are the basis of Plaintiff's claims occurred in substantial part in this District.

## PARTIES

10.    Plaintiff, Rockdale County, Georgia, acting through the Board of Commissioners of Rockdale County, Georgia, is a Municipal Corporation organized under the laws of the State of Georgia.

11.    Defendant, Bio-Lab, Inc. is a Delaware corporation with its principal place of business at 1725 North Brown Road, Lawrenceville GA 30043-8119. It is subject to process service via its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808-1674.  It is wholly owned by KIK International LLC, a Delaware limited liability company.

12.     Defendant, KIK International LLC, the parent company of Defendant Bio-Lab, Inc., is a Delaware limited liability company.  It is subject to process service via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 North Orange Street, Wilmington DE  19801-1120.

13.    Defendant, KIK Custom Products Inc. (whose registered trade name is KIK Consumer Products Inc.) is a Delaware corporation with its principal place of business located at

4

101 MacIntosh Boulevard, Concord, Ontario, L4K4R5.  It is wholly owned by KCP Holdings Inc., a Delaware corporation. On information and belief, it is either a parent company or other corporate affiliate of Defendant Bio-Lab, Inc., and/or Defendant KIK International LLC.  It is subject to process service via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 North Orange Street, Wilmington DE  19801-1120.

## GENERAL FACTUAL ALLEGATIONS

### *BIO-LAB MANUFACTURING FACILITIES*

14.     Bio-Lab, Inc. is a company located at 1700 Covington Highway, Conyers, Georgia ("Bio-Lab plant") that manufactures chemicals for swimming pools and spas and has been operational since 1973.

15.     Bio-Lab, Inc. is part of KIK Custom Products Inc., which acquired it in 2013 to enhance its pool and spa treatment business.

16.     Manufacturing operations at the Bio-Lab plant specialize in the production of various chemical products, primarily focused on pool and spa maintenance, including chlorine and other sanitizing agents.

### *EXPLOSION AT THE BIO-LAB PLANT*

17.     On September 29, 2024, a fire erupted at the Bio-Lab plant in Conyers GA. The fire activated a sprinkler system that malfunctioned and doused water-reactive trichloroisocyanuric acid ("TCCA") inside the building.

18.     A fire at the Bio-Lab plant located at 1700 Covington Highway, Conyers GA triggered a chemical decomposition reaction that released chlorine gas and other chemicals stored at the facility into the atmosphere. When these chemicals are combusted, they can produce a smoke

plume containing various harmful contaminants, including chlorine gas, which disperses into the air and poses health hazard to employees and nearby residents. This phenomenon occurs as the heat from the fire breaks down chemical compounds, releasing gases that contribute to the smoke plume.[2]

19.     Defendants' failure to possess, maintain and operate an effective fire protection system exacerbated the harm caused by the fire at the Bio-Lab plant and delayed emergency response to the fire.

20.     By 6:35 a.m., Rockdale County officials were on-site assessing the situation and instructed residents to shelter in place if the smoke plume shifted toward them or if they detected a strong chlorine odor.

21.     The smoke plume was reported to be spreading across Rockdale County due to prevailing weather conditions, resulting in ongoing shelter-in-place and evacuation orders. Approximately 17,000 residents from the surrounding area were ordered to evacuate, and over 90,000 residents were ordered to shelter in place as a precautionary measure. The community of Rockdale County, Georgia has approximately 93,000 residents and the community of Conyers, Georgia has approximately 17,000 residents.

22.     The fire caused a "complete collapse" of the Bio-Lab plant building, as the roof caved in, and multiple walls fell as a result of the fire.[3]

23.     According to the Georgia Emergency Management and Homeland Security Agency, chemicals released from the fire included chlorine, chloramine, and chlorine compounds.

---

[2] https://www.chemistryworld.com/news/fire-at-us-pool-chemical-plant-releases-huge-chlorine-plume/4020293.article (https://perma.cc/TF9B-2D83).

[3] https://abc7chicago.com/post/conyers-biolab-fire-interstate-closed-outside-atlanta-georgia-residents-evacuate-due-chemical-plant/15372491 (https://perma.cc/GTS9-EPJG).

24.     Bromine, a chemical used in pool treatments and known for its bleach-like odor, was also detected, albeit at lower levels.

25.     Georgia Tech professor Sally Ng reported that a monitoring system detected a 1,400-fold increase in chlorine-containing particles and a 170-fold increase in bromine-containing particles in the air over Decatur on the morning following the incident.[4]

26.     Symptoms from chlorine exposure may include blurred vision, burning sensations in the eyes and throat, coughing, chest tightness, breathing difficulties, and nausea.

27.     The Rockdale County emergency management authorities mobilized resources to respond to the fire at the Bio-Lab plant. Local firefighters were deployed to contain the blaze and prevent it from spreading to nearby structures. In addition, public safety officials worked diligently to disseminate information to residents about the potential health risks associated with the smoke plume, advising them on safety measures and evacuation procedures.

28.     In addition, Plaintiff closed Rockdale County Government offices and the Rockdale County Courthouse as a precautionary measure to minimize potential exposure to any emissions resulting from the cleanup operations.

29.     Plaintiff continues with monitoring and cleanup efforts at the Bio-Lab plant to address the contamination resulting from the incident. Monitoring efforts include ongoing testing of the air and water quality.

30.     Furthermore, the EPA activated its emergency response protocols following the incident. They dispatched a team of environmental specialists to assess the site and evaluate the extent of contamination in the air and surrounding areas.

---

[4] https://www.chemistryworld.com/news/fire-at-us-pool-chemical-plant-releases-huge-chlorine-plume/4020293.article (https://perma.cc/TF9B-2D83).

31.     EPA also established air quality monitoring stations to provide real-time data on the levels of hazardous chemicals present, ensuring that the community receives timely updates on safety conditions.[5]

32.     Also, the U.S. Chemical Safety and Hazard Investigation Board ("CSB") is sending a team of investigators to the site to determine the cause of this dangerous incident and the safety gaps at the facility that allowed this huge fire to occur. The CSB is an independent federal agency charged with investigating incidents and hazards that result, or may result, in the catastrophic release of extremely hazardous substances.[6]

33.     As of October 7, 2024, a shelter-in-place order was still in effect for residents of Conyers that live within a two-miles radius of the Bio-Lab plant.

## CAUSES OF ACTION

## COUNT I: CLEAN AIR ACT

34.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

35.     The citizens suit provision of the Clean Air Act ("CAA") encourages Plaintiff and other persons to act as private attorneys general to enforce air-quality standards. As a private attorney general, Plaintiff is entitled to injunctive relief and civil penalties payable to the U.S. Treasury of up to $121,275 per day for each violation by Defendants of any emission standard or limitation under the Act. 42 U.S.C. § 7604(a); 40 C.F.R. § 19.4.

36.     "Emissions standards or limitations" include, without limitation, any condition or

---

[5] https://www.epa.gov/ga/conyers-ga-biolab-fire (https://perma.cc/XX9C-7U2G).

[6] https://www.csb.gov/us-chemical-safety-board-sends-team-to-investigate-major-chemical-fire-at-bio-lab-facility-in-conyers-ga (https://perma.cc/3JMW-RVDE).

requirement of a Clean Air Act permit, any requirement of CAA §§ 111 and 112, and any standard,

limitation, or schedule established under subchapter V of the Act or established under Rule 391-

3-1 of the Rules and Regulations of the State of Georgia regulating air quality.[7]

37.     On information and belief, Defendants have committed multiple violations of the

relevant emission standards and limitations, and related orders, made actionable by 42 U.S.C. §

7604(a). Because this action involves Defendants' violations of 42 U.S.C. § 7412(i)(3)(A) and/or

(f)(4), Plaintiff is excepted from any obligation to give prior notice of suit, under 42 U.S.C. §

7604(b)(2).

### COUNT II: EMERGENCY PLANNING AND
### COMMUNITY RIGHT-TO-KNOW ACT (EPCRA)

38.     Plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

39.     The Emergency Planning and Community Right-to-Know Act (EPCRA) requires

owners or operators of facilities to periodically notify state regulators of the presence of

extremely hazardous materials at the facility. EPCRA § 302(c), 42 U.S.C. § 11002(c). Violations

of this requirement trigger the right of a state or local government to commence a civil action

against the owner or operator of the facility for its failure to submit the required information.

EPCRA § 326(a)(2)(A)(i), 42 U.S.C. § 11046(a)(2)(A)(i).

40.     EPCRA also requires owners and operators of facilities to provide immediate notice

of the release of an extremely hazardous substance to the designated state emergency response

commission and the emergency coordinator for the appropriate local emergency planning

commission. EPCRA § 304(b), 42 U.S.C. § 11004(b); 40 C.F.R. § 355.40(a).

---

[7] https://rules.sos.ga.gov/gac/391-3-1.

41.     Facilities must also give written follow-up emergency notice to the state emergency response commission and the local emergency planning commission "as soon as practicable after a release" of an extremely hazardous substance. EPCRA § 304(c), 42 U.S.C. § 11004(c); 40 C.F.R. § 355.40(b).

42.     "Extremely hazardous substances" are those chemicals that EPA has listed at 40 C.F.R. Part 355, app. A.[8]

43.     Enforcement of EPCRA can occur through the citizens suit provision, which authorizes civil penalties and injunctive relief against "an owner or operator of a facility for failure" to "submit a followup emergency notice" as required by EPCRA § 304(c), 42 U.S.C. § 11004(c). EPCRA § 326(a)(l)(A)(i), 42 U.S.C. § 11046(a)(l)(A)(i). Plaintiff is entitled to injunctive relief and civil penalties payable to the U.S. Treasury of up to $37,500 per violation for each day that Defendants failed to submit a followup emergency notice required by EPCRA § 304(c), 42 U.S.C. § 11004(c). EPCRA § 325(b)(1)(A), 42 U.S.C. § 11045(b)(1)(A); EPCRA § 326(c), 42 U.S.C. § 11046; 40 C.F.R. § 19.4.

44.     On information and belief, Defendants have committed multiple violations of the relevant provisions of EPCRA.

## COUNT III: NEGLIGENCE

45.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

46.     On or about September 29, 2024, an explosion occurred at Defendants' facility, resulting in a toxic cloud that spread throughout the surrounding community, causing significant harm to Plaintiff and others.

---

[8] https://www.ecfr.gov/current/title-40/chapter-I/subchapter-J/part-355/appendix-Appendix%20A%20to%20Part%20355

47.     Defendants had a duty to ensure safe operational practices and to provide adequate supervision of their employees and facilities to prevent foreseeable accidents, including explosions.

48.     Upon information and belief, Defendants failed to implement proper supervisory protocols, leading to a lack of oversight regarding the handling of hazardous materials. This negligence directly contributed to the explosion and subsequent toxic release.

49.     Defendants had a legal obligation to comply with safety regulations, including the proper installation and maintenance of fire suppression systems adequate to quickly and effectively extinguish fires at their facility while also avoiding causing dangerous chemical reactions with water-reactive chemical; however, the failure to do so contributed to the combustion incident caused by the defective fire sprinklers.

50.     Defendants' failure to provide and maintain adequate fire sprinklers and fire control systems created a hazardous environment. This negligence was a direct violation of established safety standards designed to protect Plaintiff and the surrounding community from the dangers associated with industrial operations.

## COUNT IV: PUBLIC NUISANCE

51.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

52.     Rockdale County owns and occupies property used to serve the citizens of its County.

53.     Defendants created a continuous nuisance through their explosion and the subsequent migration of a toxic cloud around Rockdale County. This incident required 17,000 residents to evacuate their homes, while the remainder of the County's approximately 90,000

residents were ordered to shelter in place. The resulting air quality hazards and disruptions significantly interfered with the daily lives of the community, further constituting an ongoing nuisance.

54.     The contamination caused by Defendants' actions unreasonably interferes with public health and rights common to the public and Plaintiff such as enjoyment of their property and safe air quality.

55.     Residents of Rockland County who came into contact with the toxic cloud composed of chlorine, chloramine and chlorin compounds, have suffered damages by, among other things, being exposed to the harmful effects of these chemicals. The harm caused by Defendant's actions is not merely speculative or limited to those with particular sensitivities; rather, Defendants' actions impacted ordinary, reasonable individuals.

56.     The specific damages incurred by Plaintiff include, but are not limited to, expenses associated with emergency response efforts, evacuation procedures, and public health measures necessitated by the explosion at the Bio-Lab plant.

57.     Plaintiff has faced significant costs related to the evacuation of approximately 17,000 residents and the shelter-in-place orders for the remaining 90,000 residents, which required extensive coordination and resources.

58.     Additionally, the contamination resulting from the toxic cloud has led to increased public health monitoring and environmental cleanup efforts. The damages also encompass economic losses due to business interruptions, decreased property values, and the long-term impact on community health and safety, which collectively represent a substantial financial burden on the city. These damages are directly caused by Defendants' actions.

59.     It was reasonably foreseeable, and in fact known to Defendants that their actions would place, have placed, and will continue to place, Plaintiff at risk of harm. The nuisance is continuous and has caused substantial damages and will continue to cause damages until it is satisfactorily abated.

60.     Defendants have shown a deliberate disregard for the repercussions of their actions.

61.     The harms resulting from the actions of Defendants are not merely trivial or limited to those with particular sensitivities; instead, their actions have a significant impact on ordinary, reasonable individuals such as Plaintiff. *See GA* § 41-1-1.

## COUNT V: PRIVATE NUISANCE

62.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

63.     Defendants have created a nuisance through their actions related to the explosion at the Bio-Lab plant, which resulted in the release of a toxic cloud containing chlorine, chromium, and other harmful compounds into the environment. This contamination has severely impacted Rockdale County air quality, causing significant harm, inconvenience, and distress to its residents. The presence of these hazardous substances poses serious risks to public health and safety, disrupting the daily lives of the community and compromising the air quality.

64.     The air contamination resulting from the explosion at the Bio-Lab plant, which released a toxic cloud of chlorine, chromium, and other harmful compounds, constitutes a private nuisance. This situation interferes with Plaintiff's property interests and deprives its residents of their right to enjoy their property fully. Furthermore, the County has incurred considerable expenses in response to this incident, including efforts for air quality monitoring and public health protection.

65.     It was reasonably foreseeable, and indeed known to Defendants, that their actions would lead to air contamination, adversely impacting the community. This nuisance has caused substantial damages and will continue to inflict harm until it is effectively abated and resolved.

### COUNT VI: ABATEMENT OF NUISANCE

66.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67.     Pursuant to O.C.G.A. §§ 41-2-1 and 41-2-2, Plaintiff has the right to initiate an action to abate the nuisance caused by Defendants' release and discharge of a toxic cloud containing chlorine, chromium, and related compounds, which has resulted in ongoing air contamination and adversely affected the community and Plaintiff's properties and resources.

68.     In addition to seeking damages, Plaintiff is entitled to an injunction to eliminate the nuisance created and perpetuated by Defendants. The Court should issue an injunction requiring Defendants to remove their toxic substances from the air and environment or to fund the necessary measures to prevent further contamination. This action is warranted due to the continuing irreparable harm posed to Plaintiff and the significant damage to Plaintiff's property interests, for which there is no adequate legal remedy.

### COUNT VII: TRESPASS

69.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70.     Plaintiff owns and occupies property that is affected by the air contamination resulting from Defendants' actions. These actions include, but are not limited to, expenses associated with emergency response efforts, evacuation procedures, and public health

14

measures necessitated by the explosion at the Bio-Lab plant, which has invaded Plaintiff's property and adversely impacted its interests.

71.     Defendants intentionally engaged in these activities, fully aware that their actions would lead to air contamination that created a smoke plume and affected the surrounding community. This invasion has significantly impacted Plaintiff's exclusive possessory rights to its property.

72.     The invasion and presence of the toxic chemicals at, under, onto, and into Plaintiff's properties has and continues to be without permission or authority from Plaintiff or anyone who could grant such permission or authority.

73.     Plaintiff did not consent to this invasion by Defendants' toxic substances.

74.     Defendants knew or should have known that their manufacturing, supplying, and discharging of these harmful compounds could result in air contamination and infringe upon Plaintiff's possessory interests.

75.     The trespass committed by Defendants is ongoing. This continuing trespass has impaired Plaintiff's use of its property and has caused substantial damages by diminishing its value.

### COUNT VIII: WANTONNESS AND PUNITIVE DAMAGES

76.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

77.     Defendants owed a duty to Plaintiff to exercise due and reasonable care in their manufacturing and chemical supply operations to prevent the discharge of harmful substances, including a toxic cloud of chlorine, chromium, and related compounds, into the air.

78.     In breaching these duties, Defendants acted in a wanton, willful, and reckless manner.

79.     Defendants knew or should have known the danger posed to Plaintiff by their conduct, practices, actions, and inactions.

80.     Furthermore, Defendants were aware or should have been aware of the likely impact, harm, damage, and injury their actions would inflict on Plaintiff.

81.     The conduct, practices, actions and inactions of Defendants demonstrate a reckless disregard for Plaintiff's property and well-being, warranting punitive damages for their egregious behavior.

## COUNT IX: INJUNCTIVE RELIEF

82.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83.     Plaintiff requests that this Court issue an Order prohibiting Defendants from continuing the aforementioned conduct and requiring them to undertake all necessary actions to remove their chemicals from Plaintiff's air and property.

84.     Plaintiff further requests that this Court order the closure of the Bio-Lab plant in Conyers, Georgia, to prevent any further emissions of harmful chemicals into the environment. This action is necessary to safeguard public health and ensure that no additional contamination occurs while remedial measures are being implemented.

85.     Continuing operations at the Bio-Lab plant present a substantial present and future threat to Plaintiff and the residents of Rockdale County, given both recent incidents and a previous history of chemical releases and fires.

86.     There is a continuing risk of irreparable harm to Plaintiff if an injunction is not granted, as the presence of Defendants' chemicals in the air poses an ongoing threat to Plaintiff, and there is no adequate legal remedy available.

## COUNT X: ATTORNEYS' FEES AND EXPENSES OF THE LITIGATION

87.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

88.     Defendants have demonstrated bad faith and have engaged in unreasonable litigious behavior, causing Plaintiff unnecessary difficulties and expenses. Consequently, Plaintiff is entitled to recover its attorneys' fees and other litigation costs under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff requests the following relief from the court:

a)      An order for an award of compensatory damages;

b)      An order for an award of punitive damages;

c)      An injunction requiring Defendants to comply with all relevant aspects of federal law, eliminate their nuisance, and remove their chemicals from the Plaintiff's air supply, ensuring that these substances do not continue to contaminate it;

d)      An injunction requiring Defendants to close the Bio-Lab plant in Conyers, Georgia, to prevent any further emissions of harmful chemicals into the environment;

e)      The imposition of civil penalties for each violation, payable to the U.S. Treasury;

f)      An order for pre-judgment and post-judgment interest;

g)      An order for an award of reasonable attorneys' fees and litigation expenses; and

h)      An order for all such other relief the Court deems just.

## TRIAL BY JURY

Plaintiff requests a trial by jury as to all those issues triable as of right.


Dated: October 31, 2024                    Respectfully submitted,

                                           */s/ Mirza Qader Ali Baig*
                                           Mirza Qader Ali Baig (GA # 031610)
                                           **M. QADER A. BAIG & ASSOCIATES, LLC**
                                           913 Commercial Street NE
                                           Suite B
                                           Conyers, GA 30012-4537
                                           Tel. (770) 929-1665
                                           *mqab@mqablaw.com*

                                           Hunter J. Shkolnik
                                               *(Pro Hac Vice Application Filed)*
                                           Paul J. Napoli
                                               *(Pro Hac Vice Application Filed)*
                                           **NS PR LAW SERVICES LLC**
                                           1302 Avenida Ponce de León
                                           San Juan PR 00907-3982
                                           Tel. (833) 271-4502
                                           *hunter@nsprlaw.com*
                                           *pnapoli@nsprlaw.com*

                                           Shayna E. Sacks
                                               *(Pro Hac Vice Application Filed)*
                                           **NAPOLI SHKOLNIK PLLC**
                                           360 Lexington Avenue
                                           Floor 11
                                           New York, NY 10017-6502
                                           Tel. (212) 397-1000
                                           *ssacks@napolilaw.com*