IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROCKDALE COUNTY,<br><br>*Plaintiff*,<br><br>v.<br><br>BIO-LAB INC.;<br>KIK INTERNATIONAL LLC; and<br>KIK CUSTOM PRODUCTS INC.,<br><br>*Defendants*. | Case No. 1:24-CV-04916-SEG |

### BIO-LAB AND KIK DEFENDANTS' MEMORANDUM
### IN SUPPORT OF PARTIAL MOTION TO DISMISS OR IN THE ALTERNATIVE TO STRIKE

Defendants Bio-Lab, Inc., KIK International LLC, and KIK Custom Products Inc. (collectively "KIK," and collectively with Bio-Lab, the "Bio-Lab and KIK Defendants") respectfully submit this Memorandum in Support of their Partial Motion to Dismiss Rockdale County's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, to Strike under Federal Rule of Civil Procedure 12(f).

### INTRODUCTION

This case arises from a fire at Bio-Lab's manufacturing facility in Conyers, Georgia on September 29, 2024. A month after the fire, Rockdale County, which

1

includes the city of Conyers, sued the Bio-Lab and KIK Defendants. It asserts ten claims stemming from the fire and seeks (among other relief) to recover compensatory and punitive damages and to shut down Bio-Lab's facility permanently.

One claim and one of the County's requests for relief are subject to dismissal as a matter of law at this stage. *First*, the County brings a claim under the Clean Air Act ("CAA") for unspecified violations of emission standards. But Rockdale County failed to comply with the CAA's notice requirement, which bars its claim. *Second*, the County seeks to recover the expenses it allegedly incurred following the fire, such as by responding to the fire and coordinating evacuation and shelter-in-place orders. Yet Georgia law prohibits recovery of such expenses, and the County's request therefore should be dismissed or, in the alternative, stricken.

## BACKGROUND

KIK is one of the largest independent manufacturers of consumer products in North America. First Am. Compl. ¶ 15, Dkt. 9. In 2013, it expanded its pool and spa treatment business by acquiring Bio-Lab, a leading manufacturer of pool and spa treatment products. *Id.* ¶¶ 14-15. Bio-Lab's products include chlorine and other sanitizing agents that are critical to preventing diseases from spreading in swimming pools and hot tubs by killing algae and bacteria. *Id.* ¶ 16. Bio-Lab

manufactures these agents at a plant in Conyers, Georgia that it has operated since 1973.

On September 29, 2024, a fire ignited in one of the buildings at that plant. Dkt. 9 ¶¶ 17, 21, 23. Rockdale County directed individuals in the immediate surrounding area to evacuate until the next day. *Id.* ¶ 21.[1] It also directed Rockdale residents to shelter in place overnight as a precautionary measure from September 29 through October 7. *Id.* ¶¶ 21, 33.[2] It then lifted the order for all residents other than those within a 2-mile radius of the Conyers facility, who remained under a nightly shelter-in-place order until October 17. *Id.*

The day after the fire, dozens of lawsuits began to be filed against the Bio-Lab and KIK Defendants in federal and state court. *See, e.g.*, *In re Bio-Lab Class Actions (f/k/a Tartt v. Bio-Lab, Inc.)*, No. 1:24-cv-04407 (N.D. Ga. Sept. 30, 2024),

---

[1] *See also* Rockdale County, Georgia, Rockdale County Lifts Shelter in Place, https://www.rockdalecountyga.gov/lifts-shelter-in-place/ (last visited Feb. 24, 2025). The Court can take judicial notice of public records and government documents available on the Internet, "such as websites run by governmental agencies." *United States v. Cmty. Primary Care of Georgia, LLC*, 2022 WL 19078173, at *4 (N.D. Ga. May 9, 2022) (internal citation omitted).

[2] *See also* Bio-Lab Conyers Response Web Page, Unified Command, https://biolabconyersresponse.com/ (last visited Feb. 24, 2025). The Bio-Lab Conyers Response website was maintained by the "Unified Command response team," which included representatives from the Environmental Protection Agency (EPA), the Georgia Environmental Protection Division, Rockdale County, and Bio-Lab. The Court can therefore take judicial notice of this website. *See Cmty. Primary Care*, 2022 WL 19078173, at *4.

Dkt. 1; *Dobbins v. Bio-Lab, Inc.*, No. 24-C-09053-S5 (Gwinnett Cnty. State Ct. Sept. 30, 2024); *Hullum v. Bio-Lab, Inc.*, No. 24-cv-2330 (Rockdale Cnty. Sup. Ct. Sept. 30, 2024). A month later, Rockdale County filed this action against the Bio-Lab and KIK Defendants, asserting eight claims: negligence, public nuisance, private nuisance, abatement of nuisance, trespass, wantonness and punitive damages, injunctive relief, and attorneys' fees. Dkt. 1 ¶¶ 33-76. Soon after, on October 31, 2024, it amended its complaint, including by adding two federal statutory claims—one under the CAA and another under the Emergency Planning and Community Right-to-Know Act. Dkt. 9 ¶¶ 34-44.

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). When a complaint fails to allege necessary elements of a claim, that claim must be dismissed. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (dismissing complaint for failing to allege elements of racketeering claim); *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1206 (11th Cir. 2003) (affirming dismissal of claim where facts as alleged foreclosed the possibility that defendant was liable as a matter of law).

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike under Rule 12(f) allows the court to "prune down pleadings so as to expedite the administration of justice and to prevent abuse of its process." *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1298 (M.D. Ga. 2003).

## ARGUMENT

*First*, Count I of Rockdale County's complaint asserts a cause of action under the CAA. This claim fails because Rockdale County did not comply with the statutory notice requirement. The citizen suit provision of the CAA allows any person to commence an action alleging a violation of the Act but requires that notice be provided to the alleged violator, as well as to the EPA Administrator and the state, at least 60 days before filing suit. *See* 42 U.S.C. § 7604(a)(1), (b)(1). Rockdale County's claim must be dismissed for the simple reason that it failed to comply with this notice requirement (nor does it allege that it complied with this requirement), which is strictly construed. *See Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1328-1329 (11th Cir. 2007).

*Second*, Rockdale County seeks damages for the cost of providing public services, such as emergency response and cleanup, that are unavailable as a matter of Georgia law. The free public services doctrine, adopted by Georgia courts, *see,*

*e.g.*, *Walker County v. Tri-State Crematory*, 284 Ga. App. 34, 37 (2007), bars recovery for expenses incurred by the government in promoting its laws and protecting its citizens, and the limited exceptions to the doctrine do not apply here. Rockdale County's request for such damages should be dismissed or, in the alternative, stricken.

### I. ROCKDALE COUNTY'S CLAIM UNDER THE CLEAN AIR ACT SHOULD BE DISMISSED FOR FAILURE TO PROVIDE NOTICE

Rockdale County's claim for violation of the CAA should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Rockdale County did not provide the statutorily required notice before bringing the claim.

Rockdale County brings its CAA claim under the citizen suit provision of the statute. *See* Dkt. 9 ¶ 35. Under that provision, "any person may commence a civil action … against any person … who is alleged to have violated … or to be in violation of [] an emission standard or limitation" under the CAA. 42 U.S.C. § 7604(a)(1). A plaintiff cannot bring a suit under that provision, however, "prior to 60 days after the plaintiff has given notice of the violation (i) to the [EPA] Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." *Id.* § 7604(b)(1)(a).

The Supreme Court of the United States has instructed that compliance with a notice requirement like this one is "a mandatory, not optional, condition precedent for suit." *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26 (1989)

(describing the Resource Conservation and Recovery Act's citizen-suit notice requirement, which was "modeled upon" that of the CAA). Following that instruction, the Eleventh Circuit has explained that "unless the plaintiff provides specific notice of intent to sue at least 60 days before filing the complaint, a citizen suit may not be maintained" under the CAA. *Nat'l Parks & Conservation Ass'n*, 502 F.3d at 1328 (affirming dismissal of claim under CAA for failure to provide adequate notice). This notice requirement is "strictly construed to give the alleged violator the opportunity to correct the problem before a lawsuit is filed." *Id.* at 1329.

Controlled by this precedent, courts in the Eleventh Circuit routinely dismiss claims under the CAA where plaintiffs fail to allege compliance with the notice requirement before filing suit. *See, e.g.*, *Hall v. Franklins Spring Creek Ford*, 2023 WL 2232026, at *3 (M.D. Ga. Jan. 23, 2023) (dismissing CAA claim for failure to allege compliance with notice provision); *Davis v. Barbato*, 2018 WL 3966685, at *2 (M.D. Fla. Mar. 29, 2018) (same), *report and recommendation adopted*, 2018 WL 3956202 (M.D. Fla. Aug. 17, 2018); *Tani v. Walter Energy, Inc.*, 2014 WL 6473441, at *4 (N.D. Ala. Nov. 18, 2014) (same, where notice was given 30 days before filing of the suit, "well short of the statutorily-required 60 days").

The Court should do the same here. Rockdale County does not allege that it provided the required notice—either to the EPA Administrator, to Georgia, or to the Bio-Lab and KIK Defendants—before filing this action. Nor could it. Indeed, Rockdale County all but concedes that it did not even attempt to do so when it alleges that it is "excepted from any obligation to give prior notice of suit, under 42 U.S.C. § 7604(b)(2)." Dkt. 9 ¶ 37.

But Rockdale County is not excepted from giving notice. That exception applies only to actions brought "under subsection (a)(2)," 42 U.S.C. § 7604(b)(2), which authorizes actions against the EPA Administrator "where there is alleged a failure of the Administrator to perform any act or duty … which is not discretionary with the Administrator," *id.* § 7604(a)(2). Rockdale County is not bringing an action against the EPA Administrator; instead, it has sued private companies under subsection (a)(1). The exception to the notice requirement under 42 U.S.C. § 7604(b)(2) therefore does not save Rockdale County from its failure to comply with the notice requirement.[3]

---

[3] Even if the exception applied to actions against companies like the Bio-Lab and KIK Defendants (it does not), it does not relieve a plaintiff from providing notice; instead, it allows a plaintiff to bring an action "immediately" after providing notice rather than 60 days after providing notice. 42 U.S.C. § 7604(b)(2).

## II. THE COURT SHOULD DISMISS OR, IN THE ALTERNATIVE, STRIKE ROCKDALE COUNTY'S REQUEST FOR REIMBURSEMENT OF THE COSTS OF PROVIDING PUBLIC SERVICES

Rockdale County seeks damages associated with expenses it incurred following the fire at the Conyers facility. *See* Dkt. 9 ¶¶ 5, 56-58, 64, 70, 75. Those alleged damages include expenses related to "the deployment of emergency officials, public notifications, and the cleaning of debris resulting from the incident," *id.* ¶ 5; "expenses associated with emergency response efforts, evacuation procedures, and public health measures," *id.* ¶ 56; and "economic losses due to business interruptions, decreased property values, and the long-term impact on community health and safety, which collectively represent a substantial financial burden on the city," *id.* ¶ 58. But Georgia law bars Rockdale County's recovery of such expenses under the free public services doctrine. *See Walker Cnty.*, 284 Ga. App. at 37.[4]

---

[4] Because Rockdale County alleges that this Court has federal question jurisdiction and pendent jurisdiction over its state law claims, Georgia law applies to the state law claims. Federal courts exercising supplemental jurisdiction over state law claims apply the forum state's choice-of-law rules to select the applicable state substantive law. *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) (quoting *Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987) ("[T]he *Erie* doctrine also applies to pendent state claims litigated in federal courts.")). Under Georgia choice-of-law rules, the substantive law of the place of the wrong, which is the "place where the injury sustained was suffered," applies. *McCarthy v. Yamaha Motor Mfg. Corp.*, 994 F. Supp. 2d 1329, 1332 (N.D. Ga. 2014) (internal quotation marks omitted). Thus, Georgia state law applies to this claim.

For the reasons that follow, the Court should dismiss or, in the alternative, strike Rockdale County's request to recover the cost of performing government services as that remedy is unavailable to Rockdale County as a matter of law.[5]

### A. Dismissal Is Appropriate Because Georgia Law Bars Rockdale County From Recovering Expenses Of Providing Government Services

Under Georgia law, the free public services doctrine bars government entities from recovering the costs of providing public services from alleged tortfeasors. *See Walker Cnty.*, 284 Ga. App. at 37; *Torres v. Putnam Cnty.*, 246 Ga. App. 544, 547-548 (2000). Under that doctrine, "absent specific statutory authorization or damage to government-owned property, a county cannot recover the costs of carrying out public services from a tortfeasor whose conduct caused the need for the services." *Walker Cnty.*, 284 Ga. App. at 37. The rationale underlying this doctrine is that "the cost of public services for protection … is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service." *City of Flagstaff v. Atchison, Topeka*

---

[5] Courts are divided on whether the proper mechanism to challenge a plaintiff's prayer for relief is a Rule 12(b)(6) motion to dismiss or a Rule 12(f) motion to strike. *See White v. Alcon Film Fund, LLC*, 2013 WL 12067479, at *7 n.7 (N.D. Ga. Aug. 13, 2013). District courts in the Eleventh Circuit have left open the possibility that either may be used to challenge an improper remedy. *See, e.g., Solvi Brands, LLC v. United Brands Co.*, 2011 WL 13214420, at 3 n.1 (N.D. Ga. Jan. 25, 2011); *Paylan v. Teitelbaum*, 2016 WL 7974824, at *2 n.2 (N.D. Fla. Dec. 22, 2016), *report and recommendation adopted*, 2017 WL 359198 (N.D. Fla. Jan. 24, 2017).

*& Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (applying principles of free public services doctrine in interpreting Arizona law). And "[w]here emergency services are provided by the government and the costs are spread by taxes," *D.C. v. Air Fla., Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984), the decision to allocate such costs "implicates fiscal policy," *City of Flagstaff*, 719 F.2d at 324. Such decisions are more appropriately addressed by "the legislature and its public deliberative processes, rather than the court." *Walker Cnty.*, 284 Ga. App. at 37 (quoting *City of Flagstaff*, 719 F.2d at 324).

Here, the doctrine bars Rockdale County's request to recover its alleged expenses related to emergency response, evacuation procedures, and public health measures following the fire. The Ninth Circuit's decision in *City of Flagstaff*— "[t]he seminal case in this area of law," according to the Georgia Court of Appeals, *Walker Cnty.*, 284 Ga. App. at 36 n.2—is instructive. There, the City sought reimbursement for expenses related to the evacuation of the area surrounding tank cars that derailed while carrying potentially explosive liquified gas. *City of Flagstaff*, 719 F.2d at 323. The City sought to recover those costs on the theory that they were compensable damages arising from either the railroad's negligence or its conduct of an ultrahazardous activity. *Id.* The Ninth Circuit ruled that those costs were not recoverable, reasoning that emergency evacuation expenses, like

11

those claimed by Rockdale County here, could not be recovered by the City under the free public services doctrine. *Id.*

Other courts—in Georgia and elsewhere—rule similarly, regularly finding that governments cannot recover the type of expenses Rockdale County seeks here. In *Walker County*, for example, the Georgia Court of Appeals affirmed dismissal of the County's claims for negligence and public nuisance, for which the only damages sought were expenses in "recovering, identifying, and properly disposing of the human remains discovered at the crematorium property." 284 Ga. App. at 37. The court held that the public services doctrine barred the requested damages. *Id.* at 37-38. And other courts have prohibited recovery of similar expenses for the same reason. *See, e.g.*, *Torres*, 246 Ga. App. at 548 (affirming dismissal of claims where county spent money "enforcing its laws and protecting its citizens"); *Air Fla.*, 750 F.2d at 1079 (affirming dismissal of claims where city provided emergency response and cleanup in wake of plane crash); *City of Bridgeton v. B.P. Oil, Inc.*, 369 A.2d 49, 50 (N.J. Super. Ct. Law Div. 1976) (holding that city could not recover for costs of emergency responders mitigating oil spill); *City of Pittsburgh v. Equitable Gas Co.*, 512 A.2d 83, 84 (Pa. Commw. Ct. 1986) (affirming dismissal of municipality's claim for costs of supplying emergency responders for natural gas explosion site).

This prohibition is broad. It extends to instances—like Rockdale County's claims here—where the alleged emergency affected both private and governmental entities. *See Koch v. Consol. Edison Co. of N.Y., Inc.*, 62 N.Y.2d 548, 560 (1984) (denying recovery after a 25-hour citywide blackout for "costs incurred for wages, salaries, overtime and other benefits of police, fire, sanitation and hospital personnel from whom services (in addition to those which would normally have been rendered) were required"). And it extends to claims by government entities for lost tax revenue and decreased productivity similar to certain alleged economic losses Rockdale County seeks to recover here. *Compare id.* at 562 (dismissing plaintiffs' request to recover revenues related to a 25-hour power outage), *with* Dkt. 9 ¶ 58 ("The damages also encompass economic losses due to business interruptions, decreased property values, and the long-term impact on community health and safety, which collectively represent a substantial financial burden on the [County].").

Georgia law recognizes only two exceptions to the free public services doctrine. A government may recover these expenses (1) when a statute authorizes recovery of such expenses as compensatory damages in a tort action or (2) when the expenses are tied to damage of government-owned property. *See Walker Cnty.*, 284 Ga. App. at 37. Neither exception applies here.

First, nowhere in the First Amended Complaint does Rockdale County allege any statutory right to reimbursement. *See generally* Dkt. 9. Second, even the most charitable reading of the First Amended Complaint reveals no plausible allegations of damage to government-owned property. Rockdale County asserts that it "owns and occupies property used to serve the citizens of its County," *id.* ¶ 52, but nowhere does it identify any specific property it owns that was impacted by the incident. Indeed, but for one allegation, each property-related allegation in the First Amended Complaint fails to identify any specific property that may have been affected. *See id.* ¶ 54 (alleging the Bio-Lab and KIK Defendants' actions interfered with enjoyment of Rockdale County's property); *id.* ¶ 64 (alleging air quality impacts interfered with Rockdale County's property); *id.* ¶¶ 70-73 (alleging trespass on unidentified property owned by Rockdale County and diminution of property value).

The lone allegation concerning specific property owned by Rockdale County is that the County "closed Rockdale County Government offices and the Rockdale County Courthouse as a precautionary measure to minimize potential exposure to any emissions resulting from the cleanup operations." Dkt. 9 ¶ 28. Even that allegation, however, does not mention any *damage* to Rockdale County's property; rather, it concerns *precautionary measures* allegedly taken for the safety of individuals who might have had to visit this property. Because Rockdale County

makes no plausible allegations of damage to government-owned property, the free public services doctrine bars the costs it seeks to recover. *See, e.g.*, *Walker Cnty.*, 284 Ga. App. at 37 (dismissing claim where county was "clearly [] not seeking to recover costs associated with injury to its own property, but rather the costs it incurred in performing the public services of cleaning up" private property).

Even if Rockdale County's conclusory and nondescript assertions of its property being "affected" or "invaded," Dkt. 9 ¶ 70, sufficiently alleged damage to government property (they do not), the free public services doctrine would still bar Rockdale County from recovering the broad swath of costs that it seeks to be awarded. Those costs—such as expenses associated with public evacuation notifications, removing debris on private property, *id.* ¶ 5; evacuation procedures, emergency response efforts, public health measures and monitoring, environmental cleanup, *id.* ¶¶ 56, 58, 64, 70; and economic losses related to business interruptions, decreased private property values, and "long-term impact on community health and safety," *id.* ¶ 58—are unrelated to any damage to government property. Therefore, Rockdale County cannot recover them from a purported tortfeasor. *See, e.g.*, *City of Flagstaff*, 719 F.2d at 323-324 (affirming summary judgment against city's claims for expenses related to "overtime pay, emergency equipment, emergency medical personnel, and the cost of food provided to evacuated residents" in response to train derailment); *Cnty. of Erie v.*

15

*Colgan Air, Inc.*, 711 F.3d 147, 150 (2d Cir. 2013) (recognizing that the "'general rule' regarding non-recoverable public expenditures" has been applied "in the context of a nuclear accident, an oil spill, and the dumping of a large quantity of tires") (citation omitted).

Because Rockdale County seeks compensation for costs of providing government services that courts in Georgia and elsewhere have found barred by the free public services doctrine, the Court should dismiss its request for such costs.

**B.   Alternatively, The Court Should Strike Rockdale County's Request To Recover Public-Services Expenses Because Such Relief Is Unavailable Under Georgia Law**

In the alternative, the Court should strike Rockdale County's request for compensation for costs of providing government services for the same reason—it is barred by the free public services doctrine. Courts routinely strike requests for relief if there is no factual basis for the relief sought or it is unavailable as a matter of law. *See, e.g.*, *Ollivierre v. Aspen Square Mgmt., Inc.*, 2023 WL 7492189, at *5 (N.D. Ga. May 9, 2023) (striking request for "mental or emotional distress damages" as unavailable remedies for breach of contract claim); *Bauer v. State Farm Life Ins. Co.*, 2022 WL 912687, at *3 (N.D. Ga. Mar. 28, 2022) (striking request for "punitive or exemplary damages" after dismissing accompanying tort claim); *Holland v. Sebelius*, 2015 WL 13691436, at *4 (N.D. Ga. May 12, 2015) (striking request for "punitive damages, front pay, lost future wages, and

16

reinstatement" as immaterial to plaintiff's remaining claims), *report and recommendation adopted*, 2015 WL 13691883 (N.D. Ga. June 4, 2015); *White*, 2013 WL 12067479, at *7-8 (granting motion to strike request for punitive damages that were unavailable as a matter of law); *Hodge v. Orlando Utils. Comm'n*, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009) (same). In those cases, such requests for relief are redundant, immaterial, and impertinent to the claims in the case, and striking them "help[s] the parties avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with them early in the case." *Ollivierre*, 2023 WL 7492189, at *5.

Here, as explained above, reimbursement for providing government services is unavailable as a matter of law because it is barred under the free public services doctrine. *See supra* Part II.A. Accordingly, the Court should strike Rockdale County's request to avoid the time and expense associated with an "unnecessary foray" into relief that Rockdale County is not entitled to under Georgia law. *Ollivierre*, 2023 WL 7492189, at *5 (internal quotations omitted).

## **CONCLUSION**

For the reasons stated above, the Bio-Lab and KIK Defendants respectfully request that the Court grant their motion to dismiss Rockdale County's claim under the Clean Air Act and dismiss or in the alternative strike Rockdale County's request for public services costs.

Respectfully submitted, this 24th day of February, 2025.

<div style="display: flex;">

<div>

ALAN E. SCHOENFELD*
THOMAS K. BREDAR**
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com
thomas.bredar@wilmerhale.com


FELICIA H. ELLSWORTH*
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com


ROBIN C. BURRELL**
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
robin.burrell@wilmerhale.com

</div>

<div>

*/s/ Michael A. Caplan*
Michael A. Caplan
Ga. Bar No. 601039
Michael L. Eber
Ga. Bar No. 859338
Emily C. Snow
Ga. Bar No. 837411
Alan M. Long
Ga. Bar No. 367326
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
meber@caplancobb.com
jarnold@caplancobb.com
esnow@caplancobb.com
along@caplancobb.com

</div>

</div>

*Counsel for Defendants Bio-Lab, Inc., KIK International LLC, and KIK Custom Products Inc.*

*\*Admitted pro hac vice*
*\*\*Motion for admission pro hac vice pending*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), I hereby certify that the foregoing document complies with the font and point selections approved by L.R. 5.1(C). The foregoing document was prepared using Times New Roman font in 14 point.

This 24th day of February, 2025.

/s/ *Michael A. Caplan*
Michael A. Caplan
Ga. Bar No. 601039
mcaplan@caplancobb.com

*Counsel for Defendants Bio-Lab, Inc., KIK Custom Products Inc., and KIK International LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

This 24th day of February, 2025.

<div style="text-align: right">

*/s/ Michael A. Caplan*
Michael A. Caplan
Ga. Bar No. 601039
mcaplan@caplancobb.com

*Counsel for Defendants Bio-Lab, Inc., KIK Custom Products Inc., and KIK International LLC*

</div>