## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

**ROCKDALE COUNTY,**

*Plaintiff,*

**v.**

**BIO-LAB INC.,** *et al.,*

*Defendants.*

**C. A. No. 1:24-cv-04916-SEG**

**JURY TRIAL**

### STIPULATION AND ORDER FOR
### THE PRODUCTION OF DOCUMENTS AND
### <u>ELECTRONICALLY STORED INFORMATION</u>

Plaintiff Rockdale County and Defendants Bio-Lab, Inc., KIK International, LLC, and KIK Custom Products, Inc. (collectively, "Defendants"), (each a "Party" and collectively the "Parties") by and through their counsel of record, hereby agree that the following procedures and protocols outlined in this Order (the "Protocol") govern the production of discoverable Electronically Stored Information ("ESI") and hard-copy documents (collectively, "Discoverable Information") by the Parties in the above-captioned litigation (the "Matter"). This Protocol supersedes prior pretrial orders issued in this Matter to the extent they are inconsistent with this Protocol's provisions.

1

## I.    GENERAL PROVISIONS

### A.    General

1.    <u>Discoverability and Admissibility</u>.  Nothing in this Order is intended to be an exhaustive list of, expansion of, or limitation on the discovery obligations or rights of a Party requested to produce documents or ESI ("Producing Party") or a Party requesting documents or ESI ("Requesting Party"). Except as specifically set forth herein, this Order does not (a) alter or affect the applicable Federal Rules of Civil Procedure ("Rules"), or (b) address, limit, expand, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced.  The purpose of this Order is to facilitate the exchange of ESI and hard-copy documents in an efficient manner and in accordance with the Rules.  By stipulating to this Order and agreeing to produce documents in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

2.    <u>Producing Party's Right to Review Own Documents</u>.  This Protocol does not limit a Producing Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance,

responsiveness, and/or segregation of privileged and/or protected information before production.

3. <u>Technical Issues and Proportionality</u>. The procedures and protocols outlined in this Order govern the production of documents and ESI by all Parties. The Parties will take reasonable and proportional steps to comply with this Order. The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order and, to the extent that a Party believes that compliance with this Order imposes an undue burden or expense disproportionate to the needs of the case, the Party claiming such a burden or expense shall inform all other Parties in writing of the asserted burden or expense, describing it (and any potential solutions) with specificity, and the Parties shall thereafter promptly meet and confer in an effort to resolve the issue. All productions made pursuant to this Order are subject to any confidentiality, preservation, protective, and/or privilege orders entered in the Matter.

4. <u>Modification</u>. Any practice or procedure set forth in this Protocol may be modified by written agreement of the Parties.

5. <u>Dispute Resolution</u>. The Parties will act in good faith to try and resolve any disputes regarding the issues set forth in this Protocol prior to filing a motion with the Court or otherwise seeking relief. Regarding all disputes, if the Parties are unable to resolve the dispute after a good faith effort, the Parties may

seek Court intervention in accordance with the Court's procedures for discovery disputes.

**B.    Applicability**

The production specifications in this Order apply to documents that are produced in the first instance in the Matter.  In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor order.  The terms and specifications of this Order shall only apply to productions made after the date of entry of this Order.  Productions served in the Matter that were delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Requesting Party otherwise agree in writing.

**C.    ESI Liaison Counsel**

Each Party agrees to designate an ESI Liaison within fourteen (14) days after entry of this Protocol.  Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible).  All ESI Liaisons shall be included on all correspondence relating to document productions.

### D.    Deadlines

References to schedules and deadlines in this Protocol shall comply with

Fed. R. Civ. P. 6 with respect to computing deadlines.

### E.    Definitions:

"Non-Party" means any person or entity that is not a Party to the Action

and will be requested to produce Documents, either voluntarily or in response to

a subpoena.

"Party" means Plaintiffs and Defendants in this Matter.

"Requesting Party" means the Party requesting production of documents.

"Producing Party" means the Party that may be producing documents in

response to the request of Requesting Party.

### F.    Confidential Information

Nothing herein shall contradict the Parties' rights and obligations with

respect to any information assigned a confidentiality designation under a

protective order entered in this Matter.

### G.    Encryption

To maximize the security of information in transit, all methods of delivery

must be encrypted or, if not possible, at least password-protected; the Producing

Party will provide a decryption key or password under separate cover at the time

of production.

### H.    Rolling Productions

The Parties agree to produce documents and data on a rolling basis when practicable.  The Parties will communicate with each other about their respective priorities for production and agree to use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of information at issue, the relative accessibility of information, efficiencies in the process of search and review, and the additional processing time required for certain types of ESI.

## II.    SCOPE OF DISCOVERY

### A.    Scope in General

The Parties may obtain discovery regarding any nonprivileged matter that is relevant to any Party's claim or defense and proportional to the needs of the case, subject to Rule 26(b)(1) of the Federal Rules of Civil Procedure.

### B.    Preservation and Collection

Nothing in this Order shall alter the preservation duties imposed by the Federal Rules of Civil Procedure or applicable law.

1.    <u>Not Reasonably Accessible ESI</u>.  The Parties agree that the circumstances of this Matter do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably

accessible.  For purposes of this paragraph, the Parties agree that the following sources of ESI are not reasonably accessible:

      a.    Data remaining from systems no longer in use as of the date of this Protocol that is unintelligible to and inaccessible by commercially reliable systems.

      b.    ESI stored in volatile and non-volatile memory (including but not limited to Random Access Memory ("RAM"), Read-only Memory ("ROM"), and cache memory) or in temporary or cache files (including but not limited to internet history, web browser cache, and cookie files), wherever located.

      c.    ESI stored as server, operating system, or software application logs that do not store user-created content during ordinary use.

      d.    Temporary internet files, history, cache, cookies, and the like.

      e.    Encrypted ESI/password-protected files, where the key or password cannot be ascertained without reasonable efforts.

      f.    ESI affected by ransomware or malware or that otherwise has been corrupted or is otherwise unable to be processed without extraordinary efforts.

g.      ESI stored on photocopiers, printers, scanners, and fax machines.

h.      Other file types as agreed to by the Parties.

This protocol does not prevent any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

**C.      Third Party Subpoenas and the Processing of Non-Party Documents**

1.      A Party that issues a subpoena ("Issuing Party") upon any Non-Party shall include with the subpoena a copy of this Order and any protective orders agreed to or entered in this Matter.  The Issuing Party shall inform the recipient of the subpoena that the Parties in this Matter have requested that Non-Parties produce documents in accordance with the specifications set forth in this Protocol to the extent reasonably feasible.

2.      The Issuing Party shall promptly produce to all other Parties a copy of any documents and ESI (including any metadata) obtained from a Non-Party as set forth below:

a.      If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process such hard-copy documents or native files in accordance with the provisions of this ESI Protocol and then

produce the processed hard-copy documents or native files to all other Parties.

b.      However, any native files or documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such native files or documents are received by the Issuing Party.

i.   The Issuing Party will take reasonable steps to avoid "half-processed" productions—i.e., where practicable, to process all or none of the native files in a Non-Party production in accordance with the provisions of this ESI Protocol.

ii.  If the Issuing Party processes any native files or documents after disseminating them to other Parties in native format, the Issuing Party will produce those newly processed native files and documents to all other Parties.

c.      If the Non-Party production is not Bates-stamped, the Issuing Party will endorse the Non-Party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

3.      For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Non-Parties to object to a subpoena.

III.    **GENERAL PRODUCTION FORMAT PROTOCOLS**

    A.    **TIFFs or PDFs**

Except for structured data all production images will be provided as either a TIFF or PDF.  If producing a TIFF, the Producing Party shall provide a single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files.  If producing in PDF, each file should be provided as a single 300 DPI, text-searchable PDF.  Each document level file should be named after the BeginBates.  Additionally, the PDF should have the same number of pages as the text files have page breaks.  Each image will have a file name that is the unique Bates number of that image, pursuant to Section III(E). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor (i.e., portrait to portrait and landscape to landscape).  Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall, to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file.  Documents that are difficult to render in TIFF or PDF because of technical issues, or any other documents that are impracticable to render in TIFF or PDF format, may be produced in their native format with a placeholder TIFF or PDF image stating "Document Produced Natively," unless such documents contain redactions, in which case the

10

documents will be produced in TIFF or PDF format. Certain files may be inaccessible due to password protection, corruption, or unreadable document formats. If reasonable efforts to obtain useful images or accessible native versions of these files are unsuccessful, such documents may be withheld. In the event that a corrupt or inaccessible file is an attachment to a responsive email or Edoc, the parties shall produce the responsive email and slipsheet the corrupt or inaccessible file. A Producing Party retains the option to produce ESI in alternative formats if so agreed by the Requesting Party, which may include native format, or a combination of native and TIFF or PDF formats.

**B.    Text Files**

Each document or ESI item containing text produced under this Protocol shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

**1.    OCR**. Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize standard OCR processes and technology. OCR text files should indicate page breaks where possible. The Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. In such instances, the Producing Party will make the

paper documents available for inspection and copying, if available, in accordance with <u>Fed. R. Civ. P. 34</u>.

      **2.**   <u>ESI.</u>  Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where reasonably available, in accordance with Section IV. G ("Hidden Text, Comments, and Track Changes"). Where reasonably practicable, text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

### C.    Production of Native Items

The Parties agree that ESI shall be produced as TIFFs or PDFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix A hereto. The exception to this rule shall be, PowerPoint files (e.g., MS Office .ppt or .pptx files), spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, .mp3, .mp4, and .avi), for which all ESI items shall be produced in native format unless there is an agreement to the contrary. In addition to producing the above file

types in native format, the Producing Party shall produce a single-page TIFF or PDF slip sheet indicating that a native item was produced. The filename must retain the file extension corresponding to the original native format; for example, an Excel 2003 spreadsheet's extension must be .xls. The corresponding load file shall include NativeFileLink information for each native file that is produced. Through the pendency of the Litigation, the Producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

### D. Requests for Other Native Files

Other than as specifically set forth above, a Producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The Requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Such requests will not be unreasonably denied by the Producing Party. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix A.

### E.    Bates Numbering

All images must be assigned a Bates number that must always:  (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) identify the Producing Party.  To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  If a document is reproduced for any reason, it shall be reproduced under the same Bates number as the original production, to the extent reasonably practicable.  If additional pages are needed beyond those allocated to it during the initial production, they shall be assigned additional number following a period (e.g., "ABC-000001.001"), to the extent reasonably practicable.

The Producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

### F.    Parent-Child Relationships

Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business

14

should be preserved to the extent reasonably practicable.  For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

### G.    Entire Document Families

Entire Document families should be produced, even if only the parent email or an attachment to an email is responsive, excepting documents that are withheld on the basis of privilege and in compliance with the Parties' stipulation or the Court's order on such assertions or privilege.

### H.    Load Files

All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available.  The load file must reference each TIFF in the corresponding production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

### I.    Color

With the exception of native files, ESI and original documents containing color need not be produced initially in color unless otherwise agreed.  If

particular documents warrant a different format (*e.g.*, production of color images instead of black and white), the Parties shall cooperate to arrange for the mutually acceptable production of such documents.

### J.    Foreign Language Documents

To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language documents and ESI in the original language.  The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

### K.    Confidentiality Designations

If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or to the terms of any Protective Order entered by the Court in the Matter or a confidentiality stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images.  To the extent reasonably possible, this designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this Protocol, any protective order or confidential order, or any confidential stipulation shall not waive any

16

protection or confidential treatment. If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided.

**L.    Production Media & Protocol.**

Productions shall be provided using industry standard encryption software or hardware. Any electronic transmission of produced materials must be done via a secure file transfer system.

**M.    Resolution of Production Issues**

Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Requesting Party. The Producing Party and the Requesting Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control. However produced, a Producing Party shall provide clear instructions for accessing the production, including any necessary passwords or encryption keys.

**N.    Hyperlinks**

A Producing Party will use reasonable efforts to collect hyperlinked documents (meaning, those documents which are referenced by hyperlink that does not point to a public location) within the Producing Party's control, including those utilizing Google Workspace, Microsoft Office's "Share Documents Via Link"

feature, or other document sharing platforms, with the email or parent document to which the documents are associated. If documents cannot be extracted from links at the time of collection and the Receiving Party identifies unproduced hyperlinked documents that they request to be produced, the Producing Party will produce such hyperlinked documents provided that doing so does not impose an undue burden or expense disproportionate to the needs of the case. A reasonable request for hyperlinks should include a list of hyperlinks and corresponding Bates numbers. The Parties acknowledge that the current version of the hyperlinked document may differ from the version of the document at the time the hyperlink was sent. The parties also acknowledge that the metadata for hyperlinked documents produced under this section may not reflect the metadata for those documents at the time the documents were hyperlinked. The Parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness or reasonableness of production of the requested documents.

## O.    Hard Copy Documents

Hard-copy documents are to be scanned and produced electronically as images in the same order in which they are maintained in the ordinary course of business.  The Parties agree to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same document as a single document and to treat documents that clearly appear to be separate documents as separate documents.

For hard-copy documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable. Original document orientation (i.e., portrait v. landscape) should be maintained to the extent practicable.

### P.    Redacted Documents

Redactions for relevance may not be made within a significant number of produced documents or ESI items as a matter of course. The Parties agree to meet and confer over permissibility of redaction of non-relevant commercially sensitive information within a significant number of otherwise responsive documents, prior to the significant number documents with any such redactions being produced. No redactions for relevance to a significant number of documents will be made without prior agreement from the receiving party or order of the Court. If a party produces documents with redactions for relevance, they shall disclose this fact in a writing accompanying the production at the time that the production is transmitted. A "significant number" would be more than twenty-five (25) documents or 1% of documents in a given production, whichever is greater.

To the extent that a document is redacted, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, and the text of the Producing Party's redaction label. The Producing Party may use OCR of redacted images to provide text for redacted documents.

19

## IV.   ESI METADATA FORMAT AND PROCESSING

### A.    System Files

ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.  Other file types may be added to the list of excluded files by agreement of the Parties.

### B.    Threading

The Parties may choose to produce only the most inclusive E-mail threads and eliminate non-inclusive threads where the non-inclusive threads are completely encompassed in the inclusive threads.  If a thread has unique documents attached, that thread will be considered inclusive, and shall be produced.

### C.    De-duplication

The Parties agree that production of documents and ESI globally deduplicated in accordance with the provisions of this Protocol shall constitute production of documents as maintained in the ordinary course of business.  A Producing Party will make reasonable efforts to globally deduplicate identical ESI within their own productions, as follows:

1.    The Parties shall make reasonable efforts to not produce duplicate ESI. No Producing Party shall be required to conduct manual review to

eliminate duplicates, including but not limited to hard-copy documents that are exact duplicates of electronic versions. When duplicate ESI exists in the files of multiple custodians, the names of all custodians who were in possession of a document prior to de-duplication will be populated in the All Custodians field identified in Appendix A. Likewise, the File Path that would have been provided for each version of the document that was not produced due to de-duplication shall be populated in the All File Paths field.

2.      Duplicate non-email ESI (such as Microsoft Word documents) ("EFiles") may be identified based upon MD5 or SHA-1 hash values for binary file content. All ESI bearing an identical value are a duplicate group. The Producing Party may produce only one document or native file for duplicate ESI documents within the duplicate group; however, to the extent automatic metadata population is possible with industry standard ESI processing tools, the Producing Party will identify the additional custodian(s) (i.e., "Custodians" and "FilePaths" metadata fields set forth in Appendix A) for duplicate documents not produced.

**D.    Embedded Documents**

Embedded documents from ESI (e.g., a spreadsheet embedded within a word processing document) will, to the extent possible, be extracted and treated as child documents and related back to their top-level parent documents (e.g., standalone file, email message, etc.).

### E.    Embedded Objects

Embedded objects within documents or ESI (including but not limited to logos, icons, emoticons, and footers) may be culled, provided they are produced within the document itself.

### F.    Zero-byte Files

The Parties may filter out stand-alone files identified as zero-bytes in size (i.e., do not contain content).

### G.    Hidden Text, Comments, and Track Changes

ESI items shall be processed and produced in a manner that maintains and displays all hidden text to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, hidden worksheets, hidden slides, speaker notes, tracked changes, comments, and other revisions.  Nothing in this ESI Protocol waives a Parties' rights to assert privilege or confidentiality for any of the information referenced in this section.

### H.    Compressed Files

Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

### I.    Password-Protected or Encrypted Files

With respect to any password-protected or encrypted documents or ESI that are encountered during processing, the Producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate.  If there are any issues that make it impracticable to provide such passwords, the Producing Party will provide information to allow the Requesting Party to assess such claims.

### J.    Messages or Chats

The Parties agree that message, chat and collaboration software ESI (e.g., Microsoft Teams, OneDrive, Slack, Facebook Messenger, Signal, or WhatsApp) is discoverable subject to the considerations in FRCP 26(b).

## V.    SEARCH METHODOLOGY

### A.    Use of Search Methodologies

The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce responsive documents and ESI.  The use of a search methodology does not relieve a Party from its rights or obligations under the Rules regarding production of responsive documents, and accordingly documents or ESI known to be responsive to a discovery request or otherwise subject to production or relevant to the claims or defenses shall not be withheld solely on the

basis that it was not returned by any search methodology used in accordance with this Order.

The Producing Party shall retain the presumptive right to manage and control review of its data files, including the right to use culling, searching, and advanced technology-assisted review tools. Prior to a Party using a search methodology (if any) to cull the universe of documents to be reviewed for production, the search terms, date limitations, and custodians applied to the data searched will be disclosed by the Producing Party to the Requesting Party. Should the Parties desire to leverage Technology Assisted Review ("TAR") or Continuous Active Learning ("CAL") for culling purposes[1], any search terms intended to be applied with these technologies must be disclosed, with the following information: (a) the name of the TAR/CAL software and (b) what quality control measures will be taken.  The Parties will take reasonable steps to resolve any issues regarding the use of TAR/CAL, including meeting and conferring as necessary.

At all meet and conferrals where the topic is the validity of search terms to identify documents subject to production, the Producing Party may provide search terms hit reports pursuant to paragraph V.B ("Hit Reports") below, or other data points available to provide insight into the validity of the method used.

---

[1] A party need not disclose the use of TAR solely for review prioritization.

### B.    Search Terms

If, after disclosure of the Producing Party's proposed search methodology, a Requesting Party believes in good faith that the Producing Party's proposals regarding search, retrieval, and production would result in deficiencies in production, the Requesting Party may make requests for different or additional search methods, parameters, or search terms.  The Parties may thereafter meet and confer to resolve a dispute over the search methodology.  If a Party asserts that proposed search terms of a Requesting Party would impose an undue burden or expense or not be proportionate to the needs of the case, they may substantiate that assertion with a hit report or by other means.  If the issue is not resolved within fourteen (14) calendar days after the objection, either Party may thereafter immediately submit the dispute to the Court or its designee for resolution.

### C.    Hit reports

A hit report may contain the following with respect to each proposed or modified search term in the collection:

- The number of documents with hits for that term;

- The number of unique documents for that term and no other term; and

- The number of family members associated with each document with hits.

## VI.  PROPRIETARY SOFTWARE, SYSTEMS AND DATA STORAGE LOCATIONS

To the extent that (1) relevant ESI cannot be rendered or reviewed without the use of proprietary software (whether created by the Party or not); (2) relevant ESI is stored in large databases or file servers such as Network Attached Storage (NAS) or Storage Area Network (SAN); (3) relevant documents are stored in hard copies in a storage facility; or (4) relevant ESI exists on mobile devices and is not duplicative of ESI that is more readily available elsewhere, the Parties agree to take reasonable efforts to appropriately address the complexities introduced by such data sources, including, when appropriate, to meet and confer regarding relevant production format.

## VII.  PRIVILEGE LOGS

Any document falling within the scope of any request for production that is withheld or redacted on the basis of a claim of attorney-client privilege, work product doctrine, or any other claim of privilege from discovery (collectively referred to hereinafter as "privilege") is to be identified by the Producing Party in a privilege log. The parties disagree whether a categorical log may be appropriate in this litigation, but agree that by agreeing to this ESI Protocol, no Party waives the right to log documents categorically, if agreed to between the Parties or if permitted by the Court.  If the Parties log each individual item withheld, the logs will conform to the following specifications.

26

### A.    File Format

Privilege logs will be produced in an Excel format, or other agreed-upon format.

### B.    Fields

#### 1.    Metadata

A log of the documents withheld or redacted for privilege will be generated from the following corresponding metadata fields to the extent they exist as electronic metadata associated with the original electronically stored information:

- Author
- Subject
- Title
- Attachment Name
- File Name
- Custodian(s)
- Sender/From
- Recipient/To
- CC
- BCC
- Sent Date/Time or Created Date/Time
- Family relationship (e.g., identifying parent emails and attachments)
- File Extension

Parties may substitute an alternative description of the content within the identified metadata field(s) where the content of the metadata field reveals privileged information. Where the Producing Party has substituted an alternative description of the content within the identified metadata field(s), it shall identify each instance in which it has done so and briefly state the reason for the modification.

   **2.**  **Identifying Attorneys and Third Parties**. The privilege logs will clearly identify any attorneys or third parties on the privilege log. To the extent a document is included on the log where no attorney is listed as the author, sender or recipient, the description shall include sufficient information to enable other Parties to assess the privilege claim.

   **3.**  **Other contents.** Parties will also include on the privilege log fields containing:

- a unique document ID or Bates number;
- information sufficient to understand the family relationship of withheld or redacted documents;
- the privilege asserted (*e.g.*, attorney-client, work product); and
- a description of the nature of the withheld or redacted document or communication in a manner that, without revealing information claimed privileged, will enable a party to assess the privilege claim, with the exception that the basis for a redaction need not be logged if it is obvious from context.

   **4.**  **Treatment of Families.** Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

   If the document is the parent or child of a family of documents, some of which have been produced and others withheld, the log should identify the Bates numbers of the first document (i.e., the parent, or if the parent is withheld the first attachment) produced from the family in which the logged document was withheld.

### C.    Listservs

To the extent that Listserv or group email addresses are identified on the privilege log, the Designating Party shall work in good faith to identify individuals and/or groups of individuals who make up such Listserv or group email.

### D.    Hard Copy

To the extent a Producing Party seeks to withhold or redact any hard-copy documents or documents lacking sufficient metadata, the Producing Party shall log – if readily ascertainable – the following information for such documents consistent the Rules:

- a statement of the ground(s) alleged for withholding all or part of such document;
- the date the document was prepared or distributed;
- the identity of the document's author, along with an indication of any author who is an attorney;
- the identity of all recipients of the document, along with (1) an indication of any recipient who is an attorney and (2) an indication of any recipient who is a third party, as well an indication of the third-party relationship;
- a description of the withheld or redacted document in a manner that, without revealing information claimed privileged or protected, will enable a party to assess the privilege claim, with the exception that the basis for a redaction need not be logged if it is obvious from context; and
- a unique document ID or Bates number.

### E.    Redactions

Notwithstanding a claim of privilege, any document containing both privileged and non-privileged matter must be produced with the purportedly

privileged portion redacted, with the redacted portion indicated on the document itself.

**F.    Communications following the Complaint**

Privilege log identification is not required for privileged communications exchanged after the filing of the Complaint between the Producing Party and its counsel.

**G.    No Categorical Logging Without Consent or Court Order**

If a party wants to use a categorical log, that party shall raise the issue with the Receiving Party and the Parties shall thereafter meet and confer.  If the Parties are not able to resolve the dispute it may be submitted to the Court for resolution.


Dated this 18th day of April, 2025


SARAH E. GERAGHTY
United States District Judge

Dated:  April 9, 2024

/s/Michael A. Caplan
Michael A. Caplan
Ga. Bar No. 601039
Michael L. Eber
Ga. Bar No. 859338
Jessica Arnold Caleb
Ga. Bar No. 141507
Emily C. Snow
Ga. Bar No. 837411
Alan M. Long
Ga. Bar No. 367326
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
meber@caplancobb.com
jarnold@caplancobb.com
esnow@caplancobb.com
jcaleb@caplancobb.com
along@caplancobb.com


Alan E. Schoenfeld*
Thomas K. Bredar*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com
thomas.bredar@wilmerhale.com

Respectfully Submitted,

/s/ Mirza Qader Ali Baig
Mirza Qader Ali Baig (GA # 031610)
**M. QADER A. BAIG & ASSOCIATES, LLC**
913 Commercial Street NE
Suite B
Conyers GA  30012-4537
Tel. (770) 929-1665
mqab@mqablaw.com

/s/ Shayna E. Sacks
Shayna E. Sacks
     (Admitted Pro Hac Vice)
**NAPOLI SHKOLNIK PLLC**
360 Lexington Avenue
Floor 11
New York NY  10017-6502
Tel. (212) 397-1000
ssacks@napolilaw.com

Hunter J. Shkolnik
     (Admitted Pro Hac Vice)
Paul J. Napoli
     (Admitted Pro Hac Vice)
Veronica N. Vazquez Santiago
     (Admitted Pro Hac Vice)
**NS PR LAW SERVICES LLC**
1302 Avenida Ponce de León
San Juan PR  00907-3982
Tel. (833) 271-4502
hunter@nsprlaw.com
pnapoli@nsprlaw.com
vvazquez@nsprlaw.com

**Counsel for Plaintiff**

Felicia H. Ellsworth*
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com


Robin C. Burrell
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
2100 Pennsylvania Avenue, N.W.,
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
robin.burrell@wilmerhale.com

*Counsel for Bio-Lab and*
            *KIK Defendants*

# APPENDIX A
## METADATA PRODUCTION FIELDS

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| BEGINDOC | First Bates Number associated with document (including prefix) | All |
| ENDDOC | Last Bates Number associated with document (including prefix) | All |
| BEGATTACH | First Bates Number (i.e., BeginDoc) of parent document in the family (including prefix) | All |
| ENDATTACH | Last Bates Number (i.e., EndDoc) of last child in the family (including prefix) | All |
| PAGECOUNT | Number of Bates Numbers associated with document (i.e., BeginDoc to EndDoc) (corresponds to number of pages for documents produced in image format) | All |
| ATTACHMENTCOUNT | Number of attachments; populated for parent email records only | All |
| CUSTODIANS | Multi-value field for all custodians of a document, when global deduplication has been employed, all custodians who are | All |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| | sources of an identical document. | |
| NATIVE TYPE | Type of native file loaded into the system | Email, EFiles |
| FILEEXTENSION | File extension of document | Email, EFiles |
| FILENAME | File name of document | Email, EFiles |
| FILESIZE | Size of the file in bytes | Email, EFiles |
| FILEPATHS | Multi-value field for all original paths of a document.  All documents should have a path value present.  If multiple documents are deducted during processing, this field should be populated with all path values available. | Email, EFiles |
| DATETIMESENT | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was sent | Email |
| DATETIMERECEIVED | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was received | Email |
| DATETIMECREATED | Date (mm/dd/yyyy) and time (hh:mm:ss format) that non-email data was created | EFiles and Attachments |
| DATETIMELAST MODIFIED | Date (mm/dd/yyyy) and time that (hh:mm:ss format) that non-email data was last modified | EFiles and Attachments |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| AUTHOR | Author field where available | EFiles |
| TO | To field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| FROM | From field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| CC | CC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| BCC | BCC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| SUBJECT | Subject line extracted from email  file types (not populated for attachments unless they are also emails) | Email |
| CONVERSATION INDEX | Email thread created by the email system | Email |
| DATETIMESTARTED | Start date and time (mm/dd/yyyy hh:mm:ss) for calendar appointments | Email |
| TITLE | Title field where available | EFiles |

35

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| CONFIDENTIALITY | Level of Confidentiality per Protective Order | All |
| REDACTED | Does the document contain redactions (Y/N)? | All |
| REDACTION REASON | Redaction reason designation (will be blank for documents without redactions) | All |
| HASHVALUE | Document-level MD5 or SHA1 hash value | All |
| TIME ZONE | Time zone in which the native file was processed | Email, EFiles |
| NATIVELINK | Path and filename to produced native file format (see Paragraph 4(e) in Appendix A) | Email, EFiles |
| TEXTLINK | Link to text file (see Paragraph 3 in Appendix A) | All |
| PRODUCTIONVOLUME | Unique identifier for the production in which the document is contained | All |

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **STIPULATION AND [PROPOSED] ORDER FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** with the Clerk of Court using the CM/ECF system, which will automatically send email notification to all counsel of record.

This 9th day of April, 2025.

/s/ Shayna E. Sacks
Shayna E. Sacks